[L. A. No. 19843. In Bank. June 24, 1947.]

Guardianship of the Person and Estate of PATRICIA LEE JACOBSON, a Minor. PATRICIA LEE HORNADAY et al., Respondents, v. E. MAE McCALLOM, Appellant.

Samuel Kurland, George R. Maury and A. C. Ackerson for Appellant.

Baldwin Robertson and Earl Redwine for Respondents.

SHENK, J.—This is an appeal by E. Mae McCallom as "maternal grandmother of the ward herein, and objector, and lienor, and predecessor Special Guardian" from an order instructing and directing a special guardian and terminating the guardianship, subject to an accounting and distribution of assets.

For a statement of the facts necessary to an understanding of the questions presented see opinions this day rendered on prior appeals (*Guardianship of Leach,* L. A. No. 19230, L. A. No. 19231, *ante,* p. 297 [182 P.2d 529]; *Guardianship of Jacobson, ante,* p. 312 [182 P.2d 537] L. A. No. 19527).

On May 4, 1945, the probate court made its order approving and settling the first and final account of Mrs. McCallom, and discharging her as special guardian (*Guardianship of Jacobson, supra, ante,* p. 312, L. A. No. 19527). In August, 1945, Harold C. Morton, who, as Patricia's nominee, had also been serving as special guardian, resigned. On August 22d, on nomination of Patricia, the court appointed the Citizens National Trust and Savings Bank of Riverside to take the place of Mr. Morton as special guardian of the estate, with the powers of a general guardian. The pending petition of Patricia to terminate the guardianship on the ground that she had attained her majority through marriage went off calendar.

Thereafter, and on October 13, 1945, Patricia filed in the superior court in Riverside County, a proceeding to determine the validity of her marriage pursuant to section 78 of the Civil Code, naming as defendants her husband Delyn and the special guardian bank. Section 78 of the Civil Code, as amended in 1943, provides that ''If the female party to any marriage, who has reached the age of 18 years, desires to have the validity of said marriage established in order to establish the fact or time, or both, of her attaining majority, she may proceed, by action in the superior court, brought against the husband . . .; and even though she be under the age of 21 years, such action may be commenced and prosecuted by her in her own name and right, and need not be brought or prosecuted in her behalf by general guardian or by a guardian ad litem; but if she has a general guardian of her estate he shall, unless he prosecuted the action on her behalf be joined as a defendant together with the husband, in which latter event no judgment shall be made . . . until such general guardian of the estate has either appeared in the action, or defaulted . . .; and provided further, that if the plaintiff . . . has no general guardian of her estate the court may, in its discretion require the appointment of a guardian ad litem to prosecute the action on her behalf and to safeguard her interests in the action.''

Under this statute Patricia was entitled to bring the action to establish her marriage in her own name. Since the powers of her general guardian Hornaday were suspended pending his appeal from the judgments of removal, she joined as a party defendant her special guardian with powers of a general guardian, the Riverside bank. This was proper. The deposed guardian Hornaday was not a necessary party. His powers being suspended, the situation was as if Patricia had no general guardian. Indeed, Mrs. McCallom would probably have been the first to protest any effort to include Hornaday as a party to the action since her whole effort throughout this prolonged litigation has been to remove him from the scene. The requirement of the statute as to essential parties was satisfied.

At the time the complaint was filed there had been no adjudication in the removal proceedings of the validity of the marriage (*Guardianship of Leach, supra, ante,* p. 297, L. A. No. 19231); neither was that question at issue in any other calendared proceeding in the guardianship matter. The prior petition to terminate the guardianship by reason of the marriage was off calendar and the present proceeding had not yet been instituted. Riverside County was the then residence of Patricia and her husband and it was the county in which the Riverside bank was holding the assets of the guardianship estate.

The complaint in the Riverside action alleged facts concerning the Nevada divorce secured by the former wife of Delyn and the Nevada marriage of Patricia and Delyn. It also alleged the pendency of the removal proceeding and the finding therein of the invalidity of the marriage. It stated that on September 14, 1945, after appointment of the bank as guardian, and in order to protect Patricia's property for many years to come, Patricia had executed a declaration of a fifteen-year full management trust, irrevocable until she reaches the age of thirty years, and to be operative upon termination of the guardianship provided that termination shall occur before her attainment of the age of twenty-one years. She will be twenty-one on August 14, 1947.

The defendants Delyn and the bank each filed a written appearance and waiver of notice of trial and of findings. Judgment was entered the same day, October 13, 1945, decreeing that the marriage of Patricia and Delyn was in all

respects lawful and valid; that Patricia attained her majority on the date of the marriage; and that she was thereafter an emancipated person. That judgment became final.

Thereafter, on January 9, 1946, Patricia instituted the present termination proceeding. She prayed for a declaration of the attainment of her majority and among other things asked that upon approval of the account of the special guardian bank and payment to it of a just fee, an order be made directing it to convey the guardianship assets, pursuant to the full management trust, to itself and Attorney Earl Redwine as trustees. By leave of court Mrs. McCallom, as maternal grandmother and former special guardian, filed an answer asserting that the issues raised by the petition had been determined adversely to Patricia in the prior guardianship proceedings. She also asked for protection of her lien for counsel fees and expenses (see *Guardianship of Jacobson, supra, ante*, p. 312, L. A. No. 19527).

The matter was heard by Judge John Gee Clark. Among other things the court found that there had never been in any prior proceeding an adjudication of the invalidity of the marriage of Patricia and Delyn although there was in the removal proceeding, in which an appeal was pending, a finding to that effect; that, however, no persons other than the grandmother and F. Paul Hornaday were parties to that proceeding; that a judgment determining the validity of the marriage had been entered in the Riverside action; that the marriage was in all respects valid and that in November, 1945, a son was born, the issue of that marriage; that Patricia attained her majority on the date of her marriage; that no evidence was introduced by Mrs. McCallom in support of her allegations other than statements of the status of prior proceedings; and that $50,000 would be a reasonable amount for the bank to retain as special guardian to protect the McCallom lien. On these findings, and on April 12, 1946, an order was entered declaring that Patricia had attained her majority on the date of her marriage, and that the guardianship should be terminated; directing the bank to distribute all except $50,000 of the guardianship assets to itself and Mr. Redwine, as cotrustees of the full management trust; terminating proceedings except for a reservation of jurisdiction to settle the guardian's account; directing the guardian to hold $50,000 until further order of the court; and authorizing

Patricia to apply for substitution in pending appeals as appellant *sui juris*.

This order adequately protects the lien of Mrs. McCallom in that the bank as special guardian will not only retain $50,000 for the purpose of "discharging all final awards that may be made against said guardianship estate and for the payment of just fees, compensation and expenses, all until the further order of the court," but the trust declaration also provides that the trustees shall pay out of the principal of the trust estate "all sums finally ordered by any court of competent jurisdiction, as attorneys' fees, compensation and expenses, guardian fees and costs in the above entitled proceedings, which are finally adjudicated to be a charge against said guardianship estate, . . ."

 It is contended that the court did not have jurisdiction to hear and determine the petition for termination because appellant McCallom did not have proper notice of hearing. Pursuant to section 1600 of the Probate Code, Mrs. McCallom had filed a request for special notices. The petition to terminate was filed on January 9th and on January 10th written notice was sent to Mrs. McCallom and all other interested parties that the petition had been set for hearing on February 4th. However, a copy of the petition to terminate did not accompany the notice as specified in section 1601 of the Probate Code. When the matter was called for hearing on February 4th Mrs. McCallom was personally present with her counsel. The defect in the notice was called to the attention of the court and Mrs. McCallom's counsel requested a continuance. After an effort to find a date convenient for all, February 25th was selected.

The court then said: ". . . All matters will be continued until February the 25th at 2 p. m. Now, will you gentlemen see that the requisite notices are sent out for that time unless notices are waived. Mr. Crump (representing Patricia): Will notice be waived of everything except the service of that petition? Mr. Maury (representing Mrs. McCallom): Surely . . . The Court: . . . Notice is waived except as to the petition to terminate, and it is not waived . . ."

Thereafter, and on February 8th, which was sixteen days before the hearing set for February 25th, a copy of the petition was served on Mrs. McCallom. On the hearing date she was present with all three of her attorneys and filed an

answer which raised no issue of lack of jurisdiction because of defective notice. Her counsel, however, claimed that the court had not acquired jurisdiction of the subject matter because the copy of the petition to terminate had not been mailed with the notice within two days after the filing of the petition as specified in section 1601. Mr. Crump thereupon read to the court a transcript of the proceedings had on February 4th and reminded the court that counsel for Mrs. McCallom had not appeared especially at that time, nor had they requested a dismissal, or stated that they would insist upon a new petition being filed; that on the contrary, they had requested and consented to a continuance, merely stating that they wanted a copy of the petition served, and that they waived notice of the hearing set for February 25th. The court overruled the objection to its jurisdiction, and thereafter found that due and regular notice of the hearing had been given and that a copy of the petition had been duly and regularly served.

The record sufficiently supports the finding. Notice was duly given within the two-day period specified in section 1601, but the notice was defective in failing to have appended thereto a copy of the petition. Pursuant to this notice Mrs. McCallom made a general and not a special appearance. Notwithstanding the defect in the notice she submitted to the jurisdiction of the court. She was not prejudiced in any way by this procedure; in fact her counsel were accommodated by the granting of the continuance at their particular request, and under the circumstances they may not now assert that the notice was insufficient to confer jurisdiction.

Neither the Riverside judgment nor the order here under review constitutes a redetermination of an issue adjudicated in the removal proceeding and the several contentions based upon this premise must fall. As already stated, there was in the removal proceeding no adjudication of the validity of the marriage (*Guardianship of Leach, supra, ante,* p. 297, L. A. No. 19231). ▇ The Riverside judgment, however, is res adjudicata of the issue in this proceeding and it is upon that ground that the court based its determination herein. That the court acted in the best interests of the ward is supported by the record. The guardianship estate had already been depleted by litigation and the conduct of the proceeding by the court evidenced a commendable purpose to bring it to a close without further technical entanglements and expenses.

■ The contention that the Riverside judgment is void upon the face of the judgment roll and that extrinsic fraud was practiced upon the Riverside court is not shown. It appears that in the Riverside action Earl Redwine, who was counsel for the special guardian bank, prepared the two waivers, one of which was signed for the bank by its trust officer and the other by Patricia's husband Delyn. It is contended that this constituted an appearance and waiver by each in propria persona. It is argued that the bank, being a corporation, could only appear by counsel, and that Mr. Redwine, who had filed the complaint as attorney for Patricia, committed a fraud upon the court in failing to show that he also acted as attorney for the defendants, the proceeding thus being a collusive one.

Mr. Redwine states in a separate brief that he was not representing the bank in its capacity as special guardian at the time in question or prior to November, 1945; that the trust officer of the bank advised him that the bank, as special guardian, was not disposed to resist the action and was willing to appear by waiver, whereupon the notice was prepared by Mr. Redwine and executed by the trust officer. Mr. Redwine's statement that he was not the attorney for the bank is countered by an affidavit of opposing counsel appended to the closing brief of appellant. The issue is immaterial to the determination of this appeal. The alleged collusion does not appear on the face of the judgment roll in the Riverside action and therefore cannot be made the basis of a successful collateral attack on the Riverside judgment. No evidence of the alleged collusion was introduced at the hearing in this proceeding. Mrs. McCallom was not a party to the Riverside action; she did not seek to be joined as a party; nor did she sue in equity to set aside the judgment for extrinsic fraud.

■ It was not incumbent upon the bank, as special guardian, to contest the Riverside suit or to try to invalidate the marriage if it felt that this would not be for the best interest of the ward or that the marriage was valid. There was no conflict of interest. In other words, the bank, as special guardian, acted within its right in joining in the protest against the allowance of alleged excessive fees to counsel for Mrs. McCallom and in refusing to join in an attack, in the removal proceeding or elsewhere, upon the validity of Patricia's marriage.

■ Although the appearance and waiver of the bank in propria persona may have been irregular (see *Prudential Ins. Co.* v. *Small Claims Court,* 76 Cal.App.2d 379 [173 P.2d 38], and authorities cited pp. 385 et seq.; *Mullin-Johnson Co.* v. *Penn Mutual Life Ins. Co.,* 9 F.Supp. 175; 9 Cal.Jur. 10-Yr. Supp. 348, §15, 19 C.J.S. § 1323, pp. 1004 et seq.; 157 A.L.R. 282), this would not render the judgment vulnerable to collateral attack in the guardianship proceeding. The defect in the waiver left the situation as though the bank had defaulted and the default judgment had been prematurely entered.

■ A premature default judgment is merely irregular or erroneous; it is not void; and as against a collateral attack in a proceeding in which it has been pleaded as res judicata, it is res judicata, even though erroneous. (*Mather* v. *Mather,* 22 Cal.2d 713, 723 [140 P.2d 808] ; *Gray* v. *Hall,* 203 Cal. 306, 317 [265 P. 246] ; *In re Newman,* 75 Cal. 213, 220 [16 P. 887, 7 Am.St.Rep. 146] ; *Harnish* v. *Bramer,* 71 Cal. 155, 159 [11 P. 888] ; 14 Cal.Jur. § 28, p. 903; see, also, *Mitchell* v. *Auto etc. Underwriters,* 19 Cal.2d 1, 7 [118 P.2d 815, 137 A.L.R. 923].)

It is also suggested that the service upon, as well as the appearance of the bank, was meaningless because a trust officer is not one specifically designated to receive service under section 411, subdivision 1 of the Code of Civil Procedure. The bank asserts in its brief that the trust officer is the officer whom it has regularly designated for the service of process upon it. The record contains no showing to the contrary.

The order appealed from is affirmed.

Gibson, C. J., Edmonds, J., Carter, J., Traynor, J., Schauer, J., and Spence, J., concurred.